UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK NORMAN RUKES,

    Petitioner,                                  Civil Case No.: 19-12248
                                                               Honorable Linda V. Parker

v.

STATE OF MICHIGAN,

    Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Jack Norman Rukes ("Petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for assault with intent to do great bodily harm less than murder. At the time he filed the petition, Petitioner was serving a term of parole. He has since been discharged from parole supervision.[1] Petitioner raises four grounds for relief. The Court finds that Petitioner's claims do not warrant relief and denies the petition. The Court

---

[1] Petitioner's discharge from parole supervision does not defeat § 2254's "in custody" requirement because the requirement is satisfied as long as a petitioner is incarcerated, on parole, probation, or bail at the time a petition is filed. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *McVeigh v. Smith*, 872 F.2d 725, 727 (6th Cir. 1989).

also denies a certificate of appealability, and grants Petitioner leave to proceed in forma pauperis on appeal.

## I. BACKGROUND

Petitioner's convictions arise from his assault of Joe Hubenschmidt on June 4, 2015. He was charged in the Livingston County Circuit Court with assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84. Following a jury trial, Petitioner was convicted as charged. On April 21, 2016, he was sentenced as a second habitual offender to 18 months to 15 years of imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals raising five claims through counsel and two additional claims in a pro se supplemental brief. The Michigan Court of Appeals affirmed Petitioner's convictions, setting forth the following relevant facts:

> Defendant was convicted of assaulting his roommate, Joe Hubenschmidt. Defendant had rented a room from Hubenschmidt and was living at Hubenschmidt's mobile home on the date of the assault. According to witnesses, defendant, Hubenschmidt, and several others were drinking and socializing at Hubenschmidt's home on June 4, 2015. Hubenschmidt became agitated when defendant repeatedly referred to him as "bro," a term Hubenschmidt interpreted as having offensive connotations. The banter between the two became more intense as the day went along. Witnesses who were gathered outside described hearing a loud noise from inside the home. When they went inside to investigate, they saw Hubenschmidt lying on the kitchen floor, covered in blood. Defendant was

> sitting on a sofa in the living room. Hubenschmidt got up and grabbed a knife, but a witness told him to put it down, which he did. Hubenschmidt testified that he was in his kitchen when defendant, absent any instigation or assault by Hubenschmidt, attacked him from behind and repeatedly hit and kicked him. Hubenschmidt was transported by ambulance to a hospital. He was diagnosed with several lacerations and extensive bruising and swelling on his face. Four of the lacerations required stitches. He also sustained fractures to his eye socket and jaw. The treating physician opined that a single blow or a flat or blunt surface likely did not cause all of Hubenschmidt's injuries.
>
> The defense theory at trial was that defendant struck Hubenschmidt in self-defense. Defendant testified that he was inside cooking dinner when Hubenschmidt approached him and placed him in a headlock. Defendant stated that he threw Hubenschmidt off and Hubenschmidt's head hit the kitchen counter. Defendant said he hit Hubenschmidt approximately four times. Defendant's friend, Jason Harrington, testified that he was at Hubenschmidt's home on the date of the offense. Harrington stated that he went inside to use the bathroom and that when he came back toward the kitchen, he saw Hubenschmidt holding defendant in a headlock. Defendant freed himself and hit Hubenschmidt several times. Harrington left immediately, before the police arrived, because he was on probation and he did not want to get into further trouble.

*People v. Rukes,* No. 334665, 2017 WL 6598149, at *1 (Mich. Ct. App. Dec. 26, 2017). These facts are presumed correct on habeas review under 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

Petitioner sought, and was denied, leave to appeal in the Michigan Supreme Court. *People v. Rukes*, 502 Mich. 938 (Mich. July 27, 2018).

Petitioner then filed the pending petition for the writ of habeas corpus. He raises these claims:

    I.      The trial court erred in admitting other-acts evidence.

    II.     Petitioner was denied the effective assistance of counsel.

    III.    Petitioner was denied due process by numerous instances of prosecutorial misconduct.

    IV.    Prosecutor Angela Delvereo violated the trial courts ruling that she should not inquire into a witness's legal status.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). This presumption is rebutted only

5

with clear and convincing evidence. *Id.* Moreover, for claims adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. DISCUSSION

#### A. Other-Acts Evidence (Claim I)

Petitioner's first claim concerns the admission of evidence that in 2010, he was convicted of aggravated assault against his ex-wife. The Michigan Court of Appeals held that the evidence was properly admitted under Mich. Comp. Laws § 768.27b(1), which allows evidence of a defendant's other acts of domestic violence, "if relevant and not excludable under MRE 403, 'in a criminal action in which the defendant is *accused* of an offense involving domestic violence[.]'" *Rukes*, 2017 WL 6598149, at *2 (quoting Mich. Comp. Laws § 768.27b(1)) (emphasis in *Rukes*).

Petitioner argues that admission of this evidence violated state law. This claim is not cognizable on habeas review. The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). An inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not

6

the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68.

Even if Petitioner's argument is broadly construed as raising a due process claim, habeas relief is not warranted. An evidentiary ruling may violate the Due Process Clause (and thereby provide a basis for habeas relief) where the ruling "is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States,* 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)). The Supreme Court "defined the category of infractions that violate fundamental fairness very narrowly." *Estelle*, 502 U.S. at 73 (1991). To violate due process, an evidentiary decision must "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (citation omitted).

"There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). The Supreme Court has not addressed the issue of propensity evidence in constitutional terms, finding admission of such testimony more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Dowling v. United States*, 493 U.S. 342, 352 (1990). Indeed, "[t]he Supreme Court has never held

7

(except perhaps within the capital sentencing context) that a state trial court's admission of relevant evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012); *Thompkins v. Macauley*, No. 21-1282, 2021 WL 7629670, at *3 (6th Cir. Oct. 6, 2021). Consequently, there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of section 2254(d)(1). *Bugh*, 329 F.3d at 513. Petitioner, therefore, is not entitled to relief on this claim.

### B. Prosecutorial Misconduct (Claims III & IV)

Next, Petitioner maintains the prosecutor engaged in several instances of misconduct by eliciting improper and prejudicial testimony and by making improper arguments to the jury. The Michigan Court of Appeals held that these claims were not preserved for appellate review because defense counsel did not object to the prosecutor's conduct at trial and reviewed them under a plain error standard.[2] *Rukes*, 2017 WL 6598149, at *3. A state court's plain-error analysis

---

[2] **Error! Main Document Only.**Respondent argues that the prosecutorial misconduct claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests

amounts to "an adjudication on the merits," 28 U.S.C. § 2254(d), entitled to AEDPA deference when, as is the case here, the state court's plain-error analysis "conducts any reasoned elaboration of an issue under federal law." *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

A prosecutor's misconduct violates a criminal defendant's constitutional rights if it "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned." *Id.* (internal quotation omitted). To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted).

### 1.

Petitioner maintains that several instances of misconduct negated the presumption of innocence. First, he argues that the prosecutor improperly questioned Michigan State Troopers about their personal belief in Petitioner's guilt in the context of Petitioner's claim of self-defense. For example, state trooper

---

of judicial economy are best served by addressing the merits of the prosecutorial misconduct claims.

Thomas Kill testified that, based upon the nature and extent of Hubenschmidt's injuries, he believed that Petitioner had numerous opportunities to leave the scene safely but instead continued to attack Hubenschmidt. (*See* ECF No. 8-12 at Pg ID 907–08.) Similarly, state trooper Andrew Haynes testified that at some point during the altercation, Hubenschmidt's extensive injuries would have rendered him no longer a threat to Petitioner. (ECF No. 8-11 at Pg ID 771.) The Michigan Court of Appeals held that the testimony was properly admitted because it was "rationally based on their perception of the nature and extent of Hubenschmidt's injuries, and the testimony was helpful to a determination of the self-defense issue." *Rukes*, 2017 WL 6598149, at *4. The state court concluded that, because the testimony was properly admitted, the prosecutor did not engage in misconduct by eliciting the testimony. *Id.*

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. There is generally no prohibition, on a witness offering opinion testimony which goes to an ultimate issue in a case. Both the Federal and Michigan Rules of Evidence permit such testimony. *See* Fed. R. Evid. 704(a); Mich. R. Evid. 704. And there is no clearly established federal law as determined by the Supreme Court, which suggests that the admission of such evidence violates the Constitution. *See Davis v. Trierweiler*, 2018 WL 1586487, *10 (E.D. Mich. March 31, 2018).

10

Trooper Hayes's testimony about whether Petitioner acted in self-defense explained the course of the investigation—why Petitioner was not arrested immediately and how the extent of Hubenschmidt's injuries led police to conclude that Petitioner should be arrested. Trooper Kill's testimony regarding self-defense was also relevant to explaining the course of the police investigation. In closing argument, the prosecutor did not ask the jury to find that Petitioner did not act in self-defense based on the officers' testimony. Instead, she used the troopers' testimony and related inferences to argue that Hubenschmidt's injuries would have rendered him unable to pose a continuing threat to Petitioner. Petitioner fails to show that this argument was improper.

Next, Petitioner claims that the prosecutor also negated the presumption of innocence by referring to Hubenschmidt as the victim and to Petitioner as the suspect. The Michigan Court of Appeals denied this claim holding that Petitioner was accurately referred to as the "suspect" and that use of this term did not denote a determination of guilt. *Rukes*, 2017 WL 6598149, at \*4. The court also held that it was not improper to identify Hubenschmidt as a victim and, even assuming it was improper, the reference did not impact Petitioner's substantial rights. *Id*.

The state court's decision is neither contrary to, nor an unreasonable application of, Supreme Court precedent. As the state court noted, Petitioner was a suspect and the jury would not have been surprised or improperly persuaded by

11

hearing him described as such.  Moreover, Hubenschmidt suffered severe injuries resulting from some form of beating, so it was not improper for the prosecutor to refer to him as a victim.

Next, Petitioner maintains that Hubenschmidt's and Trooper Kill's testimony that Petitioner was hiding from police was based on unfair speculation and shifted the burden of proof.  Hubenschmidt's testimony was elicited by defense counsel and, therefore, was not prosecutorial misconduct.  Kill described law enforcement's efforts to locate Petitioner and Petitioner's ultimate arrest in an apartment in Brighton, Michigan.  Kill testified that he forcibly entered Petitioner's apartment and found Petitioner "hiding behind his bed in the bedroom."  (ECF No. 8-12 at Pg ID 913.)  The Court finds nothing improper in Kill's testimony as it was not based on speculation, nor did it shift the burden of proof.

### 2.

Next, Petitioner claims that the prosecutor engaged in misconduct by vouching for the credibility of prosecution witnesses both through the questions she asked and in her closing argument.  The Michigan Court of Appeals held that the prosecutor properly argued that, based on the evidence presented, certain witnesses were credible.  *Rukes*, 2017 WL 6598149, at *5.  The state court further held that the prosecutor's questioning of witnesses was not improper.  *Id.*

The state court's decision is not contrary to, or an unreasonable application of, the *Darden* standard. The prosecutor did not argue that she possessed any special knowledge about the truth of the prosecution witnesses' testimony. She argued that the evidence supported the witnesses' credibility. This was not improper vouching.

**3.**

Finally, Petitioner challenges the prosecutor's handling of defense witness Jason Harrington. On direct, Harrington testified that he was present for the altercation between Petitioner and Hubenschmidt. He saw Hubenschmidt choking Petitioner from behind while Petitioner struggled to escape. Petitioner eventually flung Hubenschmidt to the ground. Harrington saw Petitioner hit Hubenschmidt three or four times. When the fight was over, Petitioner told someone to call 911. Harrington left before police arrived because he was on probation at the time. (ECF No. 8-11 at Pg ID 799–804.)

On cross-examination, the prosecutor questioned Harrington about his consumption of alcohol on the night of the fight and in the months preceding the fight. The terms of Harrington's probation prohibited him from using alcohol. The defense objected to questions related to Harrington's conduct in the months before the assault. The trial court held that Harrington's actions on the night of the incident were relevant to his "motive to lie … motive to leave the scene" and,

13

therefore, were "fair game." (ECF No. 8-11 at Pg ID 817.) Harrington's previous drinking and potential probation violations, however, were irrelevant and the court held that line of questioning should not be pursued. (*Id.* at Pg ID 818.)

The prosecutor limited her remaining questions to Harrington's conduct on the night of the assault. In closing argument, the prosecutor asserted that Harrington should not be considered a credible witness because he lacked respect for the legal process as evidenced by violating his probation by drinking on the night of the incident. The Michigan Court of Appeals held that, even if the prosecutor's argument was improper, Petitioner was not denied a fair trial because the prosecutor advanced other arguments challenging Harrington's credibility, including inconsistencies between Harrington's and Petitioner's testimony. *Rukes*, 2017 WL 6598149, at *5. The state court further held that the prosecutor fairly challenged Harrington's credibility on the basis that he failed to come forward earlier with information. *Id.*

The state court's decision was not an unreasonable application of federal law. The "prosecution necessarily has wide latitude during closing argument to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009) (quotation omitted); *see also United States v. Young*, 470 U.S. 1, 20 (1985) (concluding that during closing arguments, the prosecutor's rebuttal to a defense attorney's direct attack in his integrity did not

14

affect the fairness of the trial). Here, the prosecutor's rebuttal was responsive to defense counsel's argument that Harrington was worthy of belief and had testified that he would not lie for his friend. The prosecutor fairly responded by examining Harrington's behavior on the night at issue and his disregard for a court order requiring him to abide by certain parole conditions. And a prosecutor is free to argue that a witness should not be believed based upon the witness's delay in coming forward. *See United States v. Aguwa*, 123 F.3d 418, 420 (6th Cir. 1997) (holding that a prosecutor may properly argue that a witness is not to be believed because the witness delayed in coming forward with an alibi); *see c.f. Doyle v. Ohio,* 426 U.S. 610 (1976) (concluding that a prosecutor may challenge the credibility of a defendant "concerning his failure to present his alibi when his opportunity to do so came before he was in custody and before he was advised of his right to remain silent.").

    Finally, the trial court instructed the jury that the lawyers' arguments were not evidence, and they should base their verdict only on the evidence or lack of evidence presented. Jurors are presumed to follow the trial court's instructions. *See Mammone v. Jenkins*, 49 F.4th 1026, 1060 (6th Cir. 2022) (citing *Richardson v. Marsh*, 481 U.S. 200, 208 (1987)). Petitioner is not entitled to relief on his prosecutorial misconduct claims.

15

### C. Ineffective Assistance of Counsel (Claim II)

Petitioner maintains that defense counsel was ineffective for failing to object to the claims of prosecutorial misconduct discussed above.

To establish ineffective assistance of counsel, a Petitioner must show that counsel's performance was deficient, and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Michigan Court of Appeals held that counsel was not ineffective for failing to object to the prosecutor's conduct because the claimed instances of misconduct were meritless. *Rukes*, 2017 WL 6598149, at *5. And, to the extent the prosecutor did engage in misconduct, the misconduct was minimal and did not prejudice the defense. *Id.* As discussed above, Petitioner fails to show that the prosecutor committed misconduct. Counsel cannot be held ineffective for failing to object to conduct that was not improper. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally

16

unreasonable nor prejudicial."). As such, the Court denies Petitioner's ineffective assistance of counsel claims.

## IV. CERTIFICATE OF APPEALABILITY

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (2003) (internal quotes and citations omitted).

The Court finds that jurists of reason could not debate the conclusion that Petitioner has failed to demonstrate an entitlement to habeas relief. A certificate of appealability is denied.

The Court grants Petitioner leave to appeal in forma pauperis because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner may proceed in forma pauperis on appeal if he chooses to appeal this decision. 28 U.S.C. § 1915(a)(3).

**SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: January 11, 2023

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, January 11, 2023, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager